## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

YINESKA ROLLIN,
*on behalf of herself and all others*
*similarly situated*,

      Case No.: 8:14-cv-1543-EAK-TGW

      Plaintiffs,

v.

CACH, LLC, *a foreign limited liability*      **CLASS**
*company,* FEDERATED LAW GROUP,      **REPRESENTATION**
PLLC, *a Florida professional limited*      **(Unlawful Debt**
*liability company,* and BRYAN MANNO,      **Collection Practice)**
*an individual*,

      Defendants.

_____/

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
### INCORPORATED MEORANDUM OF LAW

**COMES NOW**, Plaintiff, YINESKA ROLLIN (hereinafter, "Rollin"), by and

through the undersigned counsel, on behalf of herself and all others similarly situated,

and hereby requests an order from this Court certifying the class in this matter pursuant to

Federal Rules of Civil Procedure 23(a) and (b)(3) and appointing Rollin as the class

representative and Rollin's undersigned counsel as class counsel.   In support of this

motion, Rollin states:

### I.      INTRODUCTION

Rollin filed an amended class action complaint against Defendants, CACH, LLC,

(hereinafter, "CACH"), FEDERATED LAW GROUP, PLLC (hereinafter, "FLG"), and

BRYAN MANNO (hereinafter, "Manno") (hereinafter collectively, "Defendants"),

alleging that Defendants routinely and systematically violated the Fair Debt Collection

Practices Act, 15 U.S.C., Section 1692, *et seq.* (the "FDCPA").   The Amended

Complaint, filed July 30, 2014, is premised upon Defendants' uniform practice of attempting to collect charged-off consumer credit card debts via Court Filings that seek an impermissibly inflated amount due supported by facially incompetent affidavits. Copies of said Court Filings are attached to both the Amended Complaint and this motion as **Exhibit A1-A14**, **Exhibit B1-B28**, and **Exhibit C1-C11** (hereinafter collectively, the "Court Filings").

Specifically, Defendants wrongfully assert in the Court Filings a legal right to collect a contractual rate of interest (i.e. "default rate") on the debts in the absence of a breach of contract claim. Additionally, Defendants routinely file facially incompetent affidavits by unqualified witnesses in support of summary judgment motions that are not based on personal knowledge and fail to attach or authenticate any documents referenced therein. Debt buyers such as Defendant CACH purchase defaulted credit card accounts in large bulk from original creditors for cents on the dollar, and in exchange for the low price, receive minimal account records to substantiate the debt and no assistance or guarantees of collectability from the original creditor.[1] The risk of filing collection suits that are not fully vetted is financially worthwhile for the debt buyers because the majority of consumer-defendants default. *Id.* The expenses associated with procuring competent, admissible evidence in advance are not cost justified in light of the volume of expected defaults. As described in more detail below, Defendants' conduct violates the FDCPA,[2]

---

[1] *See* Federal Trade Commission, *"Structure and Practices of the Debt Buying Industry,"* January 2013, available at: http://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf (last visited Sept. 12, 2014). The FTC reported that debt buyers receive only three types of documents: account statements, received for 6% of accounts, "terms and conditions" documents, also received for 6% of accounts, and account applications documents, received for less than 1% of accounts. Buyers typically received just one type of document per account. *Id.* at p. 35.

[2] Debt buyers and debt collection attorneys qualify as "debt collectors" and are subject to the FDCPA. *North Star Capital Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1335-36 (M.D. Fla. 2009); *Heintz v.*

Sections 1692e, e(2)(A), e(10), and f(1), and constitutes common law Negligent Misrepresentation.

Rollin seeks to represent a class of all Florida consumers whom Defendants served with documents in similar form, substance, or improper purpose as the Court Filings in an attempt to collect a debt through the Florida Courts, that included a contractual based interest rate (e.g. "default rate") when Defendants did not have a breach of contract claim or count pled in their underlying debt collection lawsuit, in violation of the FDCPA within a one-year period of time prior to the filing of the original Complaint on June 25, 2014 up through and including the present date[3] (hereinafter, the "Class" or "Class Members"). (Dkt. 1, at ¶ 52). Also, Rollin seeks to represent a sub-class of all consumer debtors who were part of the Class and who incurred out-of-pocket expenses, including but not limited to, attorneys' fees or costs, as a result of hiring an attorney to defend such debt collection lawsuit during the Class Period (hereinafter, "Sub-Class Members" or "Sub-Class") (hereinafter collectively, together with the Class, the "Classes").

Although it is still early in the case, before the start of discovery, Rollin's factual allegations in the Amended Complaint, together with information available in the public record, meet the procedural standard for class treatment.[4] The individual members of the Classes are so numerous as to make joinder impracticable; common questions of fact and law exist between the Class Members and Sub-Class Members (and predominate over

---

*Jenkins*, 514 U.S. 291, 292 (1995); *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014) (finding that debt buyers are undisputedly debt collectors subject to the FDCPA).

[3]The time period beginning on June 25, 2013 through and including the present is referred to herein as the "Class Period."

[4]Plaintiff intends to supplement the present motion once additional information has been made available to her through the discovery process; at the current phase of this case, discovery is not yet available to Plaintiff. Fed. R. Civ. Pro. 26(d)(1); 26(f).

questions affecting only individual members); Rollin's claims are typical of those in the Classes; and a class action is the superior method of adjudication that is manageable by this Court.

## II.    BACKGROUND

This case stems from a lawsuit filed against Rollin in the Pinellas County, Florida Circuit Court, Case Number 12-01641CI-011, by Defendant CACH, an alleged assignee of Bank of America, N.A. n/k/a FIA Card Services, N.A. (Exhibit A1-A14). The law firm Defendant FLG and attorney Defendant Manno represent CACH in that action. The circuit court Complaint sought judgment on an unpaid credit card balance originally issued by Bank of America, N.A. on or about October 28, 2003 (the "Credit Account"). (Exhibit B2). On or about August 31, 2010, Bank of America, N.A. allegedly "charged off"[5] the Credit Account balance of $14,561.32. (Exhibit B12).

In the Complaint, signed by Manno, CACH claimed that it purchased Rollin's charged-off Credit Account in a bulk sale from the original creditor on or about September 23, 2010. (Exhibit A1-A5). Attached to the Complaint as Exhibit "A" was a one-page "Bill of Sale and Assignment of Loans," which did not reference Rollin's Credit Account. (Exhibit A5).[6] Attached to the Complaint as Exhibit "B" was a copy of one account statement from Bank of America, N.A. to Rollin dated July 15, 2010 to

---

[5] Creditors "charge off" debt in accordance with federal regulations that permit the creditor to remove the debt from their financial records, treating the account as a loss and receiving a tax deduction under the Internal Revenue Code. *McDonald v. Asset Acceptance LLC*, 2013 WL 4028947, *1 (E.D. Mich., Aug. 7, 2013). Under the Interagency Uniform Retail Classification and Account Mangement Policy guidelines, banks must charge off open-ended retail credit loans, such as credit cards, once they have become 180 days past due. *See* OCC Bulletin 2000-20, "Uniform Retail Credit Classification and Account Management Policy." Available at

http://www.occ.gov/news-issuances/bulletins/2000/bulletin-2000-20.html.

[6] Rollin did not receive notice of the assignment within thirty (30) days thereof, as required by Section 559.715, Florida Statutes, (2010). (Affidavit of Yineska M. Rollin, dated August 25, 2014, a copy of which is attached hereto as **Exhibit D**). At a hearing on August 29, 2014, the circuit court denied Defendants' Motion for Summary Judgment based upon the material issue of fact related to this threshold issue.

August 12, 2010 (the "Account Statement"). (Exhibit A7-A12). The Account Statement stated, "[f]or the complete terms and conditions of your account, consult your Credit Card Agreement." (Exhibit A8). However, a copy of the Credit Card Agreement was not attached to the Complaint.

### A. Defendants' Court Filings Attempt to Collect Unlawful Charges, Namely, Contractual "Default Rate" Interest in Absence of a Contractual Claim in Violation of the FDCPA

Defendant's circuit court Complaint included two counts for Unjust Enrichment and Account Stated. (Exhibit A1-A4). In both counts, CACH demanded an award of prejudgment interest at the alleged contractual rate of 14.24%, which it referred to as the "default rate" and "default credit agreement rate." (Exhibit A2-A3, ¶¶ 14, 17). Defendants asserted the right to collect $687.40 of "default rate" interest for an approximate six-month period of time, beginning February 10, 2012, and running through June 10, 2012, for a total of $15,248.72.[7] (Exhibit A2). Defendant further asserted the right to collect prejudgment interest on the $15,248.72 at the "default rate" of 14.24%. (Exhibit B8).

The rate of prejudgment interest is established pursuant to Section 687.01, Florida Statutes. Section 687.01, Florida Statutes, states: "Rate of interest in absence of contract.—In all cases where interest shall accrue without a special contract for the rate thereof, the rate is the rate provided for in s. 55.03."[8] A party claiming interest at a rate set forth in an express contract must establish that the parties agreed to that rate of

---

[7] Indeed, the period of time over which the "default rate" interest is charged is unclear. Defendants' Complaint, on the one hand, asserted that the default interest is calculated through June 10, 2012, while the Affidavit filed in support of Defendants' Motion for Summary Judgment, on the other hand, asserted that the default interest is calculated through August 9, 2012. In either circumstance, the default interest is in fact charged and included in Defendants' Debt collection efforts, with calculation commencing almost eighteen (18) months after Rollins's original creditor charged off the debt.

[8] Section 55.03, Florida Statutes, provides that the rate of interest on judgments shall be set quarterly by Florida's Chief Financial Officer.

interest, and the contract must be in writing. *See e.g., Wilkinson & Jenkins Const. Co., Inc. v. Florida Rock Industries, Inc.,* 475 So. 2d 743 (Fla. 2d DCA 1985). Therefore, in order to claim the right to prejudgment interest at the "default rate" or "default credit agreement rate," Defendants were required to allege and prove that a "special contract" with Rollin established the default interest rate 14.24%. Defendants simply had no legal right to demand prejudgment interest at the alleged contractual rate of 14.24%, rather than at Florida's statutory rate, which is currently 4.75%.[9] First, as a matter of law, "[u]njust enrichment cannot apply where an express contract exists which allows the recovery." *May v. Sessums & Mason, P.A.*, 700 So. 2d 22 (Fla. 2d DCA 1997)*; Atlantis Estate Acquisitions, Inc. v. DePierro*, 125 So. 3d 889, 893 (Fla. 4th DCA 2013). Defendants' Unjust Enrichment count, therefore, is necessarily premised upon the theory that there was *no contract* with Rollin. (Exhibit A2). As such, Defendants omitted any allegations in the Complaint to support its demand for "default rate" interest, which requires proof that the parties agreed to that rate of interest in a written contract. *Wilkenson & Jenkins Const. Co., Inc.*, 475 So. 2d at 744. In essence, Defendants claimed the right to collect contractual prejudgment interest on a non-contractual claim for unjust enrichment—a right that simply does not exist under Florida law. *See e.g. Iberiabank v. Coconut 41, LLC*, 984 F. Supp. 2d 1283, 1299-1300 (M.D. Fla. 2013) (holding that prejudgment interest accrues on an unjust enrichment claim at the statutory rate).

Second, Defendants also had no legal basis to seek prejudgment interest at the "default credit agreement rate" in its claim for Account Stated. Like the count for Unjust Enrichment, Defendants' Account Stated count eschewed any claim based upon the Credit Card Agreement with Rollin, and instead, alleged that an independent implied

---

[9] Available at http://www.myfloridacfo.com/Division/AA/Vendors/ (last visited Aug. 29, 2014).

agreement was formed based upon the Account Statement attached to the Complaint. (Exhibit A2-A3). *See Farley v. Chase Bank, U.S.A., N.A.*, 37 So. 3d 936, 937 (Fla. 4th DCA 2010) ("The cause of action for an account stated is based upon 'the agreement of the parties to pay the amount due upon the accounting, and not any written instrument.'"). The Account Statement, however, fails to establish a "default rate" of interest. (Exhibit A7-A12). The Account Statement only references the interest rates applicable to "Balance Transfers," "Cash Advances," and "Purchases." (Exhibit A9). Because there was no "default rate" expressly agreed to in the Account Statement upon which the action for Account Stated was based, Defendant could not plead a "special contract" for the higher rate of interest in the Complaint. *See WPB, Ltd. V. Supran*, 720 So. 2d 1091, 1092 (Fla. 4th DCA 1998) ("A special contract is always an express contract, one whose provisions are expressed and not dependent on implication.").

Possibly, Defendants may argue that a "default rate" of interest was established in Rollin's Credit Card Agreement.[10] However, Defendant failed to plead the existence of the Credit Card Agreement, failed to attach a copy to the Complaint, and failed to allege any claim arising out of that agreement. Instead, Defendants' theory is that a liability wholly independent of the Credit Card Agreement arose under the implied contract theory of Account Stated. Any terms in the Credit Card Agreement, therefore, were inapplicable to the Complaint. *See Citibank (South Dakota), N.A. v. Martin*, 807 N.Y.S. 2d 284, 293 (N.Y. Cty. Ct. 2005) ("A request for contract interest should not be made if judgment is requested on an account stated, for this claim is independent of any contract provision."). Because the demand for a "default rate" of interest was not supported by the

---

[10] Rollins requested a copy of the Credit Card Agreement from CACH in discovery in the circuit court action, but as of the date of this Motion, CACH has not produced a copy. Instead, it produced a purported exemplar copy of a Bank of America, N.A. cardmember agreement.

Account Statement upon which the claim relied, Defendants consciously made the claim without a legal basis. *See e.g., Wilkenson & Jenkins Constr. Co., Inc.* 475 So. 2d at 744 (denying an award of prejudgment interest at a contract rate where there was no evidence that the interest provision found in a separate letter was part of the account stated that was the subject of the lawsuit); *Nelson v. Ameriquest Tech., Inc.*, 739 So. 2d 161 (Fla. 3d DCA 1999) (affirming award of prejudgment interest at the statutory rate rather than the rate contained in the invoices being sued upon because the preprinted interest rate on the invoice forms was insufficient to establish a special written contract between the parties for the higher rate of interest).

In addition to the Complaint, Defendants repeatedly attempted to collect interest at the "default rate" in other Court Filings, including their Motion for Summary Judgment (Exhibit B4), their Affidavit of CACH, LLC Authorized Agent (Exhibit B8), and their Motion of Statement of Good Cause Showing Plaintiff's Debt Collection Lawsuit Should Not be Dismissed (the "Statement of Good Cause") (Exhibit C).

Defendants' use of the Court Filings in their effort to collect the Debt, including unlawful contractual or "default rate" interest from Rollin, violates multiple provisions of the FDCPA. *See e.g.*, *Midland Funding, LLC v. Brent*, 644 F. Supp. 2d 961, 974-976 (N.D. Ohio 2009) (finding that allegations of charging an improper interest rate pled violations under Section 1692f and 1692e); *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 30 (6th Cir. 2007) (holding that affidavit attached to state court complaint, falsely stating that bank was entitled to recover reasonable attorney's fees and costs, was a threat to take action that could not legally be taken, which also amounted to false representation or deceptive means to collect or attempt to collect a debt under FDCPA

Section 1692e.  By including in the Court Filings the "default rate" interest as part of the Debt that was allegedly due and owing, Defendants committed the following FDCPA violations: (1) use of a false, deceptive, and misleading representation of the character, amount, or legal status of the Debt in violation of 15 United States Code, Section 1692e(2)(A) (Dkt. 7, Count I); (2) use of a false representation or deceptive means to collect or attempt to collect the Debt in violation of 15 United States Code, Section 1692e and e(10) (Dkt. 7, Count I); (3) use of an unfair or unconscionable means to collect the Debt in violation of 15 United States Code, Section 1692f (Dkt. 7, Count II); and (4) collection of an unauthorized amount in violation of 15 United States Code, Section 1692f(1) (Dkt. 7, Count II).  Additionally, Defendants FLG and Manno are liable for Negligent Misrepresentations based upon the breach of their duties under the Rules Regulating the Florida Bar by making untrue, misleading, and incorrect material statements in the Court Filings.  (Dkt. 7, Count III).

**B.      Defendants' Court Filings Attempt to Collect the Debt through Use of Facially Incompetent Affidavits in Violation of the FDCPA**

In support of CACH's Motion for Summary Judgment dated June 25, 2013, Defendants filed the Affidavit of CACH, LLC Authorized Agent (the "CACH Affidavit").  (Exhibit B7-B8).  In direct violation of Rule 1.510(e), Florida Rules of Civil Procedure, the CACH Affidavit was made without personal knowledge of the facts contained therein and without attaching the documents it referenced.[11]

---

[11] Rule 1.510(e), Florida Rules of Civil Procedure, requires as follows:

> Supporting and opposing affidavits shall be made **on personal knowledge**, shall set forth such **facts as would be admissible in evidence**, and shall show affirmatively that the **affiant is competent to testify** to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit **shall be attached** thereto or served therewith. The court may permit affidavits to be

Specifically, it was obvious on the face of the CACH Affidavit that the affiant had no personal knowledge of the facts and legal conclusions contained in her affidavit, and that she expressly based her affidavit upon documentation provided by the original creditor, Bank of America, N.A. The affiant stated that she was an "authorized agent and custodian of the records of Plaintiff, CACH, LLC." (Exhibit B7). All of the Affiant's statements in the affidavit were based upon her review of "the records of this account sent to Plaintiff, CACH, LLC, by the original creditor Bank of America, N.A." By the affiant's own admission, the affiant was not at the time, and never was, an employee of Bank of America, N.A., and therefore did not have the personal knowledge requisite to testify as to the documents created and maintained over the course of approximately seven years at Bank of America, N.A. The affiant was therefore knowingly attesting under penalty of perjury to hearsay statements contained in the records of another business, by whom she was never employed—the antithesis of "personal knowledge."

At the time FLG and Manno signed the Complaint and submitted the CACH Affidavit to the circuit court, they knew that CACH's affiant had no personal knowledge of the material facts, including but not limited to, the amount the defendant-consumer owed at the time of default; whether the defendant-consumer had disputed the debt with the original creditor; or whether the contract between the original creditor and the debtor permitted the original creditor to charge a contractual or "default rate" interest after the debts had been charged off and subsequently assigned.

---

supplemented or opposed by depositions, answers to interrogatories, or
by further affidavits.

Fla. R. Civ. P. 1.510(e) (emphasis added). Failure to attach such papers referred to in an affidavit is ground for reversal of summary judgment decisions. *See CSX Transp., Inc. v. Pasco County*, 660 So.2d 757 (Fla. 2d DCA 1995).

The CACH Affidavit further wrongfully attempted to authenticate Bank of America, N.A.'s business records to circumvent the hearsay rule, by stating that "[Bank of America, N.A.'s] books and records are kept in the ordinary course of a regularly conducted business activity and are made either by a person having personal knowledge of the information contained therein or based on information conveyed by a person having personal knowledge of the information contained therein." (Exhibit B7). The affiant to the CACH Affidavit, however, was incompetent to testify as to the business activities of Bank of America, N.A. because her affidavit clearly demonstrates that she was never an employee of the entity where the records were made and did not have personal, first-hand knowledge of how the records were made and maintained. CACH already learned from submitting similar affidavits in other jurisdictions, "as Plaintiff's agent does not have personal knowledge of the original creditor's business practices, the proof is insufficient to establish a proper foundation for the account agreement and account statements." *CACH, LLC v. Sliss*, 958 N.Y.S. 2d 59 (N.Y. City Ct. 2001). *See also, CACH, LLC v. Askew*, 358 S.W. 3d 58, 62-63 (Mo. 2012) (explaining that CACH's agent was not a witness qualified to lay a foundation for original creditor's records because a "document that is prepared by one business cannot qualify for the business records exception merely based on another business's records custodian testifying that it appears in the files of the business that did not create the record). Simply put, CACH's agent cannot not satisfy the foundational requirements by simply serving as a "conduit to the flow of records" from Bank of America, N.A. and not testifying based on personal knowledge to the mode of preparation of the records in question. *Id.* at 63. *See also, Yang v. Sebastian Lakes Condominium Ass'n, Inc.*, 123 So. 3d 617 (Fla. 4th DCA 2013)

(Testimony of employee of current management company was not sufficient to lay foundation under § 90.803(6) for the records of former business when the employee was not familiar with the manner of keeping the former business' records); *Belber v. Lipson*, 905 F.2d 549, 552 (1st Cir. 1990) (Physician's custody of medical records from another doctor does not incorporate them into physician's business records. The physician in possession had no personal knowledge of any of the foundation requirements for the business record exception.). Defendants' use of such a glaringly incompetent affidavit in their effort to collect consumer debt violates the FDCPA's prohibition against the use of a false representation or deceptive means to collect or attempt to collect the Debt, 15 United States Code, Section 1692e and e(10) (Dkt. 7, Count I). *See e.g., Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1023 (S.D. Ohio 2007) (holding that FDCPA violations were properly alleged under Section 1692e where affiant lacked personal knowledge of the matters to which she was attesting); *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 30 (6th Cir. 2007) (holding that attaching a bank witness affidavit to a state court complaint asserting the right to collect attorneys' fees constituted a threat to take action that could not legally be taken, which also amounted to false representation or deceptive means to collect or attempt to collect a debt under FDCPA Section 1692e). Defendants anticipated that the use of such incompetent evidence in collecting the debts would mislead unsophisticated consumer debtors into believing they had little to no chance of successfully defending the lawsuit, and as a result, would fail to answer their complaints. Additionally, FLG and Manno are liable for Negligent Misrepresentations based upon the breach of their duties under the Rules Regulating the Florida Bar by using untrue, misleading, and incorrect material statements

in the CACH Affidavit in their attempts to collect debts from vulnerable consumer debtors. (Dkt. 7, Count III).

## III. CLASS DEFINITION

This Motion seeks certification of a class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), defined as:

> All consumer debtors who were served, directly or indirectly through their counsel, any court filings, in similar form, substance, or improper purpose as the Court Filings attached as Exhibit A1-A14, Exhibit B1-B28 and Exhibit C1-C11, from Defendants, in an attempt to collect a debt through the Florida Courts, that included a contractual based (e.g., default-rate) interest rate when Defendants did not have a breach of contract claim or count pled in their underlying debt collection lawsuit, in violation of the FDCPA within a one-year period of time prior to the filing of the original Complaint up through and including the present date (hereinafter, "Class Members" or "Class").

(Dkt. 7, ¶¶ 51-52). Further, Rollin defines and seeks certification of a Sub-Class as follows:

> All consumer debtors who were part of the Class, as defined immediately above, and who incurred out-of-pocket expense, including but not limited to, attorneys' fees or costs, as a result of hiring an attorney to defend such Debt Collection Lawsuit within a one-year period of time prior to the filing of the original Complaint up through and including the present date (hereinafter, "Sub-Class Members" or "Sub-Class") (hereinafter collectively, together with the Class, "Classes").
> Excluded from the Classes are all directors, officers, agents, and employees of Defendants and the courts to which this case may be assigned.

(Dkt. 7, ¶¶ 53-54). So long as the existence of an ascertainable class has been shown, there is no need to be able to identify the individual members of the class to determine the issues affecting the class. *Holley v. City of Naples*, 371 So. 2d 501, 502 (Fla. 2d DCA

1979).  The proponent of a class action is only required to show that the class is readily identifiable through reasonable effort in discovery.  *Frankel v. City of Miami Beach*, 340 So. 2d 463, 470 (Fla. 1977).  Due to the clarity of the class definitions set forth in Rollin's Amended Complaint, the parties can easily determine during discovery if a particular individual is a member of the proposed Classes by reviewing Defendants' files for correspondence sent during the one-year period of time prior to the filing of the Amended Complaint.

## IV.    ARGUMENT

Under Rule 23(a) of the Federal Rules of Civil Procedure, courts may certify a class where the following requirements are met:

(1)    the class is so numerous that joinder of all members is impracticable;
(2)    there are questions of law or fact common to the class;
(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition, questions of law or fact common to the members of the class must predominate over questions affecting only individual members, and class treatment should be superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(a).  "Doubts regarding the propriety of class certification should be resolved in favor of certification."  *See Singer v. AT&T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998).  "Class certification is strictly a procedural matter and the merits of the claims at stake are not to be considered when determining the propriety of the class action vehicle."  *Singer*, 185 F.R.D. at 685.  Courts may consider all of the allegations made in the plaintiff's class action complaint, and the substantive

allegations of the complaint should generally be taken as true. *Fuller*, 197 F.R.D. at 699; *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 722-23 (11th Cir. 1987).

1. **ROLLIN'S PROPOSED CLASSES SATISFY THE REQUIREMENTS OF RULE 23(a)**

    A. **Rollin's Classes Are So Numerous That Joinder of All Members of the Classes Is Impracticable**

    The Court is given discretion to make assumptions when determining the numerosity of a class. *Fuller,* 197 F.R.D. at 699. Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Id.* The focus of the numerosity inquiry is not whether the number of proposed class members are "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004) (citing *Armstead v. Pingree,* 629 F. Supp. 273, 279 (M.D. Fla.1986)). While the size of the proposed class is highly relevant to the court's determination of numerosity, courts must also consider factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits." *Id.* The Eleventh Circuit has held that "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). *See also, Faulk v. Home Oil Co., Inc.* 184 F.R.D. 645, 654 (11th Cir. 1999) (certifying class with 31 members); *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (same); *Priceline.com, Inc.*, 265 F.R.D. at 671 (certifying class of 59 counties). Where the

projected number asserts several hundred class members, the numerosity agreement is assuredly satisfied. *Sosa v. Safeway Premium Finance Co.*, 73 So. 3d 91, 114 (Fla. 2011). Moreover, close questions "should be resolved in favor of a finding of numerosity." *Singer*, 185 F.R.D. at 686-87 (citing *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594 (S.D. Fla. 1991)).

Although discovery has not yet begun, the facts alleged in the Amended Complaint and public record evidence demonstrate that the proposed Classes meet the minimum numerosity requirement. CACH is a debt buyer based in Denver, Colorado, but collects on debt throughout the United States, including Florida. CACH uses third party debt collectors and law firms, such as Defendants FLG and Manno, to file collection lawsuits if early, out-of-court, collection efforts fail. In light of the number of consumer debts that Defendants collect in the State of Florida's Sixth Judicial Circuit alone, the Classes most likely possesses thousands of members.

A quick survey of Sixth Judicial Circuit filings in Pinellas and Pasco Counties, Florida, in the year prior to the filing of this lawsuit, indicates that Defendants have filed approximately 433 debt collection lawsuits on defaulted, purchased debt. True and correct copies of the docket reports for Defendants' case filings in Pinellas and Pasco Counties are attached as **Exhibit E**.[12] Given the State of Florida's sixty-seven (67) counties, Defendants' lack of proximity to the Tampa Bay area, the presence of three other major metropolitan areas (i.e., Orlando, Jacksonville, and Miami/Ft. Lauderdale),

---

[12] Plaintiff's counsel performed a docket search in Pinellas County for all cases filed by Defendant Manno as counsel of record in Pinellas County, and calculated the total of number cases listed in the docket report in which Defendant CACH was a Plaintiff, arriving at a total of 393 cases. Plaintiff's counsel also performed a docket search of cases filed by Defendant CACH in Pasco County, and calculated the total number of cases in the docket report which listed Defendant Manno as counsel of record, arriving at a total of 40 cases.

and Defendants' systematic method of filing lawsuits to collect debt (e.g., Debt Collection Lawsuit), it is likely that the number of such debt collection lawsuits, with unlawful Court Filings, is in the thousands, if not tens of thousands. (Dkt. 7, ¶ 56).

Accordingly, while at this early juncture the exact number of Class Members is not yet known, Rollin will serve discovery related to class certification issues, including class-size. During discovery, the number of Class Members can be established from Defendants' testimony, coupled with a review of Defendants' case files during the relevant time frame, and also through the review of public records for suits filed by Defendants seeking improper interest and using incompetent affidavits. *Agan*, 222 F.R.D. at 696-97. Based upon the volume of Defendants' debt collection practices, the Classes likely consist of hundreds, if not thousands, of Florida consumers against whom Defendants filed suit improperly attempting to collect "default rate" interest without proper basis and documentation during the class period. (Complaint, ¶45). Further, given the number of such debt collection lawsuits filed using similar improperly purposed Court Filings, the number of consumer debtors who hired and had to pay lawyers to defend such lawsuits likely exceeds forty. As such, the number of Florida consumer-defendants who qualify for the Classes would entail a joinder action of individual lawsuits that would be impracticable. Accordingly, the Court should find that Rollin has met the numerosity requirement of Rule 23(a)(1).

B.     **Questions of Law and Fact Are Common to the Class**

The second prerequisite to class status involves a showing that there are questions of fact or law common to the class. Establishing commonality is a "relatively light burden." *Priceline.com, Inc.*, 265 F.R.D. at 667 (quoting *Vega v. T-Mobile USA, Inc.*,

564 F.3d 1256, 1265 (11th Cir. 2009)). Not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members. *See Fuller,* 197 F.R.D. at 700 (citing *Armstead v. Pingree,* 629 F. Supp. 273, 279 (M.D. Fla. 1986)). "A sufficient nexus is established if the claim or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Id.* (quoting *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984)).

Here, Rollin raises specific questions of law and fact common to each member of the Classes, including the following:

    i.    Whether Defendants' Court Filings falsely represent the nature, character or amount of the debt;

    ii.    Whether Defendants misrepresent the amount of the debts owed by including in their Court Filings interest which is not legally incurred, due or owed;

    iii.    Whether Defendants collect debts through unfair or unconscionable means by requiring Class Members and Sub-Class Members to pay interest which is not earned and incurred, and thus not legally due pursuant to contract or law;

    iv.    Whether Defendants systemically include interest not yet incurred or otherwise authorized by law in the Debts collected from Plaintiff, Class Members, and Sub-Class Members;

    v.    Whether Defendants asserted contractual or default rate interest due in Court Filings without a breach of contract count plead at the time such contractual interest was asserted due and collected;

    vi.    Whether Defendants used false, deceptive, or misleading means or representations in their collection of debts from Plaintiff, Class Members, and Sub-Class Members by using affidavits that did not affix the documents which affiant purportedly relied upon in making his or her "sworn" assertions;

    vii.    Whether Defendants used false, deceptive, or misleading means or representations in their collection of debts from Plaintiff, Class Members, and Sub-Class Members by using affidavits wherein, on the face of the affidavit, it is apparent that the affiant could not authenticate documents used in making his or

her "sworn" statements;

    viii.    Whether Defendants used false, deceptive, or misleading means or representations in their collection of debts from Plaintiff, Class Members, and Sub-Class Members by using affidavits wherein, on the face of the affidavit, it is apparent that it would be impossible, based on affiants "sworn" statements, for the affiant to have personal knowledge regarding such statements made in furtherance of Defendants' attempts to collect debts;

    ix.    Whether Plaintiff, Class Members, and Sub Class Members are entitled to statutory damages as a result of Defendants' unlawful debt collection practices described herein and in what amount;

    x.    Whether Plaintiff and Sub-Class Members are entitled to actual damages, namely incurring out-of-pocket expense as a result of defending or dealing with Defendants' unlawful debt collection practices described herein and, if so, in what amount; and

    xi.    Whether Plaintiff, Class Members, and Sub-Class Members are entitled to costs and reasonable attorneys' fees for litigating this case and, if so, in what amount.

(Dkt. 7, ¶ 58). Each of these common questions of fact or law is alone sufficient to meet the commonality requirement. *See Priceline.com, Inc.*, 265 F.R.D. at 667. Rollin's Amended Complaint alleges that Defendants used the same, or substantially the same, Court Filings against all Class Members. (Dkt. 7, ¶¶ 55, 59). Accordingly, the Court should find that Plaintiffs have met the commonality requirement of Rule 23(a)(2).

    **C.**    **Class Representative's Claims are Typical of Class Claims**

The claims of the putative class are typical of the claims of the broader class under Rule 23(a)(3). "Typicality is satisfied where the named plaintiffs' claims 'arise from the same event or pattern or practice and are based on the same legal theory' as the claims of the class." *Bruhl v. Price Waterhousecoopers Intern.*, 257 F.R.D. 684, 689 (S.D. Fla. 2008) (citing *Kornberg*, 741 F.2d at 1337). "Like commonality, typicality is not a demanding test." *Priceline.com, Inc.*, 265 F.R.D. at 668. "Typicality serves one

simple purpose: to assure that the named representatives' interests are aligned with those of the class." *Singer*, 185 F.R.D. at 689. As such, the typicality requirement "primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.* "[T]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Singer*, 185 F.R.D. at 689. "To defeat typicality, the factual variation of a class representative 'must be clear and must be such that interests of the class are placed in significant jeopardy.'" *Bruhl*, 257 F.R.D. at 689 (citing *Prado-Steidman v. Bush*, 221 F.3d 1266, 1269 (11th Cir. 2000)).

Here, typicality is inherent in the class definition, i.e. Rollin and the Class Members were all served with the same or substantially similar form of Court Filings. Rollin and the Class Members' share the same legal interest of ensuring that this Court finds that Defendants' Court Filings violate the FDCPA, and therefore, the legal issues arising under the FDCPA are the same for each Class Member and are susceptible to proof on a class-wide basis. Rollin and the Class Members also suffered the same injury, specifically, being served with the Court Filings by Defendants, which violated the FDCPA, and upon prevailing, Rollin and the Class Members will all be entitled to the identical statutory damages available under the FDCPA. 15 U.S.C. § 1692k(2). Moreover, typicality is not defeated by the claim for actual damages by the sub-class who did pay attorneys' fees and incur costs defending the baseless claims with incompetent supporting evidence. *See Law Offices of David J. Stern, P.A.*, 50 So. 3d 1221, 1222 (Fla. 4th DCA 2010) (affirming class certification in a case involving a form reinstatement letter that violated the FCCPA, where actual damages were sought by certain members of the class who

had reinstated their mortgages). Thus, the Court should find that Rollin meets the typicality requirement of Rule 23(a)(3).

### D. The Class Representative Will Fairly and Adequately Protect the Interests of the Class

The final prerequisite of Rule 23(a) requires a showing that the representative party or parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). Generally, the adequacy of the representation depends on two factors: (1) the named plaintiffs' attorney is qualified, experienced, and will competently and vigorously prosecute the action; and (2) the interests of the named plaintiffs are not antagonistic to or in conflict with those of the class. *See Walco Investments, Inc.*, 168 F.R.D. at 327 (citing *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)). Plaintiff and her counsel satisfy these requirements.

With respect to the adequacy of class counsel, Rule 23(a) "'involves questions of ... whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation.'" *Spinelli v. Capital One Bank*, 265 F.R.D. 598, 602-603 (M.D. Fla. 2009) (quoting *Pop's Pancakes, Inc. v. NuCo2*, 251 F.R.D. 677, 683 (S.D. Fla. 2008) (citing *Griffin v. Carlin*, 755 F.2d at 1533). Rollin retained as counsel in this case the law firm of Leavengood, Dauval & Boyle, P.A. ("LeavenLaw"). LeavenLaw is an AV-rated consumer litigation firm representing consumers across the State of Florida, in both state and federal court. For nearly forty years, LeavenLaw has primarily represented consumers against creditors, debt collectors, and insurance companies. The law firm employs eleven attorneys and maintains offices in St. Petersburg, Tampa, and Clearwater, Florida. LeavenLaw lawyers have appeared on behalf of thousands of consumers in federal and Florida state courts. LeavenLaw lawyers are exceptionally skilled in the area of unlawful

debt collection law, having represented consumers in over 650 unlawful debt collection cases, including eight consumer-based class actions, one of which was certified and defended on appeal, and the majority of the remainder having been confidentially settled as class actions or with class action-like relief. For these reasons, LeavenLaw and its lawyers possess the knowledge and insight necessary to conduct this litigation on behalf of Rollin and the proposed class. *See* Declaration of Ian Leavengood in Support of Motion for Class Certification, attached hereto as **Exhibit F**.

Based upon the qualifications of counsel outlined herein, the Court should find LeavenLaw and its attorneys are adequate to serve as class counsel under Rule 23(a). *Id.*; *see also Garcia-Celestino v. Ruiz Harvesting, Inc.,* 280 F.R.D. 640, 647 (M.D. Fla. 2012) (finding class counsel adequate on the basis that counsel was experienced in class action litigation, and particularly in the subject of the pending litigation); *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663 (S.D. Fla. 2010) (court found adequacy of representation of counsel based on the "experience and specialties" represented in affidavits of class counsel).

Moreover, Rollin is a concerned and informed consumer who believes that the Court Filings are false and deceptive, fail to conform to requirements of the FDCPA, and should not be used to collect consumer debts from Florida residents. Rollin is similarly situated with all other Class Members, is not antagonistic to other Class Members' interests, and has a personal stake in this litigation. Accordingly, Rollin's interests are coincident with, and are not antagonistic to, the putative Class Members' interests. For these reasons, the Court should find that Rollin has met the adequacy requirement of Rule 23(a)(4).

**2.      PLAINTIFF SATISFIES THE REQUIREMENTS OF RULE 23(b)(3)**

The Court should certify this putative class action because, in addition to satisfying the four prerequisites of 23(a), the Classes qualify for certification under Fed. R. Civ. P. 23(b).  Rule 23(b)(3) sets out two additional requirements for the maintenance of a class action: (i) that questions of law or fact common to the members of the class must predominate over any questions affecting only individual members; and (ii) that a class action must be superior to other available methods for the fair and efficient adjudication of the controversy at hand.  The putative Classes satisfy both requirements.

### A.      Questions of Law and Fact Predominate Over Questions Affecting Only Individual Members

"Common issues of law or fact predominate where they 'have a direct impact on every class member's effort to establish liability' that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Priceline.com, Inc.*, 265 F.R.D. at 670 (citing *Vega*, 564 F.3d at 1270).  Here, the predominance of the common questions is apparent—at its core, the case is about whether Defendants' Court Filings are false, misleading, and unlawfully demand payment for contractual interest that is not due and owing, and as such, violate the FDCPA.  The factual and legal issues that must be resolved to answer these questions relate to both Rollin and Class Members and predominate over issues that any individual Class Member faces.

### B.      Class Action Is a Superior Method of Adjudication

In addition to finding that common questions predominate, the Court must also find that a class action is the superior method of adjudicating this dispute.  *See* Fed. R. Civ. P. 23(b).  "The superiority inquiry focuses on 'whether there is a better method of

handling the controversy than through the class action mechanism.'" *Priceline.com, Inc.*, 265 F.R.D. at 671 (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir.)).  In considering the superiority issue, subdivision (b)(3) lists four factors that the Court should consider:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  No single element, however, is determinative and the list is not meant to be exhaustive of the factors that the Court should consider when determining whether to allow a Rule 23(b)(3) class action.  *See Walco Invs., Inc.,* 168 F.R.D. at 337. In fact, perhaps the most important factor when considering superiority is whether common issues predominate, as discussed *supra* Part 2(B).   "[T]he conclusion that common issues of law and fact predominate . . . strongly militates in favor of a class action as a superior means of litigating."  *Priceline.com, Inc.*, 265 F.R.D. at 671-72.

In this case, a class action is the superior method of adjudicating this controversy. There are likely hundreds, if not thousands, of Class Members whose claims all raise the same issues of law and fact.  No one Class Member has any particular unique reason to individually control the prosecution of his or her case.  The threat of inconsistent adjudication will be permanently mooted if this Class is certified.  On the other hand, if the Class is not certified and individual consumers are left to pursue their own remedies, it likely that either Defendants' misconduct will go unaddressed altogether, or

alternatively, multiple suits will be brought in various Florida courts with a concomitant threat of numerous inconsistent adjudications. Furthermore, there is significant value to concentrating all Florida consumers' claims in a single Florida court, not only to avoid inconsistent rulings, but also permit the efficient prosecution of identical claims in a single proceeding. In addition, this Court is an appropriate forum for adjudication of this class action given that the Defendants do business throughout Florida, including within the present judicial district, and this Court is located in one of the most populated areas of the state containing a large number of potential Class Members.

Finally, the class action will not be difficult to manage. While the Class is potentially large, it does not appear to be so large that Class counsel will be prevented from ascertaining and organizing the necessary information regarding Class Members. Those serving as Class counsel will be able to overcome any hurdles of managing the Class. Therefore, the Court should find the Class qualifies for certification under Rule 23(b)(3).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Rollin respectfully requests that this Court grant her Motion for Class Certification and enter an order certifying this case as a class action, appointing Rollin as representative of the Class, appointing undersigned as Class Counsel, and granting Rollin any other and further relief which she may show herself justly entitled to under the circumstances. Alternatively, Rollin respectfully requests that this Court to reserve ruling on Rollin's Motion for Class Certification, to allow Rollin to both conduct discovery in support of her and putative Class Members' claims, in accordance with Federal Rule of Civil Procedure 26(d)(1) and (f), and to supplement her

Motion for Class Certification and Incorporated Memorandum of Law at an agreed future time.[13]

Dated: September 16th, 2014.

<div style="margin-left:auto">

Respectfully submitted,

**LEAVENLAW**

/s/ *Ian R. Leavengood*
**Ian R. Leavengood, Esq., FBN 0010167**
**LEAD TRIAL COUNSEL**
**Aaron M. Swift, Esq., FBN 93088**
**G. Tyler Bannon, Esq., FBN 105718**
**Greg H. Lercher, Esq., FBN 106991**
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
ileavengood@leavenlaw.com
aswift@leavenlaw.com
tbannon@leavenlaw.com
glercher@leavenlaw.com
*Attorneys for Plaintiff, Class Members, and*
*Sub-Class Members*

</div>

---

[13] The case law in Florida is currently unsettled on whether class action plaintiffs must file a motion for class certification simultaneously with the filing of the class action complaint, or whether such plaintiffs may wait until sufficient discovery has been conducted. The core issue is whether a defendant's Rule 68 offer of judgment served upon the class representative before the filing of a class certification motion may moot the action because of the putative absence of an Article III "case or controversy" after service of the Rule 68 offer. The Middle District of Florida, Tampa Division, issued an opinion in *Jeffrey M. Stein, D.D.S., M.S.D., P.A., et al. v. Buccaneers Limited Partnership*, 2013 WL 7045328 (M.D. Fla. Oct. 24, 2013), which is currently on appeal to the Eleventh Circuit. The *Stein* court followed the opinion in *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011), holding that the class certification motion should be filed with the complaint, and the pendency of that motion protects a putative class from attempts to buy off the named plaintiffs. Further, those cases state that "if the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation." *Id.*; *see also Keim v ADF Midatlantic, LLC*, 2013 WL 3717737 (Slip Copy, S.D. Fla., July 15, 2013). The Middle District of Florida, Orlando Division, approached the issue differently in *Neurocare Institute of Central Florida, P.A. v. Healthtap, Inc.*, Case No. 6:13-cv-1228-GAP-GJK (M.D. Fla. March 25, 2014), holding that absent undue delay on the part of the plaintiff in seeking certification, an offer of judgment will not moot the class action because a timely filed motion for certification will relate back to the filing of the complaint. Accordingly, Rollin files this motion in a good-faith abundance of caution, and requests that this motion be stayed pending ample opportunity to conduct class discovery, if this Court finds that more evidence is necessary in order to rule on whether the class may be certified.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing *Motion for Class Certification and Incorporated Memorandum of Law* has been filed via the Court's CM/ECF system on this 16th day of September 2014 and furnished via process server or U.S. Mail to:

CACH, LLC
c/o CT Corporation System, Registered Agent
1200 South Pine Island Road
Plantation, FL 33324

Federated Law Group, PLLC
c/o Bryan Manno, Registered Agent
13205 U.S. Highway One, Suite 555
Juno Beach, FL 33408

Bryan Manno, Esq.
13205 U.S. Highway One, Suite 555
Juno Beach, FL 33408

*/s/ Ian R. Leavengood*
Attorney